IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CRIMINAL ACTION |
| | ) | NO. 1:23-CR-236-JPB-JEM |
| FLOYD BARROW | ) | |
| | ) | |

**OBJECTIONS TO REPORT AND RECOMMENDATION**

COMES NOW the Defendant, FLOYD BARROW, by and through undersigned counsel, and files these objections to the Report and Recommendation (hereinafter "R&R") of the Magistrate recommending denial of his motion to suppress evidence (doc. 20), motion and amended motion to suppress statements, (docs. 21, 25), preliminary motion to dismiss indictment based on Bruen (doc. 22), motion to suppress evidence obtained through execution of search warrants (docs 23, 74), motion and amended motion to dismiss indictment for lack of jurisdiction (docs, 24, 75), and motion to suppress evidence obtained through execution of search warrant at Defendant's residence (doc 26).[1]

1.

---

[1] The Report and Recommendation of the Magistrate is document number 92 on the docket of the Clerk.

1

Mr. Barrow objects to the Magistrate's factual assertion that the Georgia Tech police officers conducted an inventory search of Mr. Barrow's vehicle. (Doc. 92 at 5, 25). Mr. Barrow posits that the search of his vehicle was not a lawful inventory search.

2.

Mr. Barrow objects to the Magistrate's factual assertion that his vehicle was blocking a roadway. See (Doc. 92 at 5, 24). While the vehicle was positioned in a bike lane, it was not blocking the roadway for vehicular traffic. (Gov. Exh. 1 at 0:33).

3.

Mr. Barrow objects to the Magistrate's factual assertion that he had been arrested with no other legal driver present. (Doc. 92 at 5, 24). Mr. Barrow had a front seat passenger with him when the traffic stop occurred. (T. 40). She had a driver's license, as Officer Bransford checked it for purposes of identifying her. (Gov. Exh. 3 at 15:00-18:24).

4.

Mr. Bransford objects to the Magistrate's factual assertion that Officer Johnson completed the inventory paperwork known as a VINS report. (Doc. 92 at 6). Officer Jornlid testified that Officer Johnson completed a VINS form, (T. 46),

but the document that Officer Jornlid was referring to, Def. Exh. 4, makes no reference to the "Vehicle Information-Sharing and Notification Service," which is the document referenced in the Georgia Tech inventory as a VINS form. (Gov. Exh. 16 at 6-7).

5.

Given the lack of Eleventh Circuit or Supreme Court precedent addressing the constitutionality of § 922(o), Mr. Barrow maintains his position that § 922(o) is unconstitutional for violation of the Second Amendment. Therefore, Mr. Barrow objects to the recommendation of the Magistrate that his motion to dismiss based on Bruen (doc. 22) be denied. (Doc. 92 at 17-20).

6.

Mr. Barrow objects to the Magistrate's recommendation that his motion to dismiss the indictment for lack of jurisdiction be denied. (Doc. 92 at 19-20). In light of Supreme Court and Eleventh Circuit precedent issued after United States v. Wright, 117 F.3d 1265 (11th Cir. 1997), Mr. Barrow posits that § 922(o) exceeds Congress's authority under the Commerce Clause. See United States v. Morrison, 529 U.S. 598 (2000); Gonzalez v. Raich, 545 U.S. 1 (2005); United States v. Peters, 403 F.3d 1263 (11th Cir. 2005). Based on the criteria set forth in Peters, the mere intrastate possession of an item capable of causing a firearm to fire automatically

3

does not have the necessary substantial effect on interstate commerce.  See Peters, 403 F.3d at 1270-1274.  The conduct in and of itself is not commercial or economic in nature. There is no interstate jurisdictional requirement under § 922(o).  The legislative history to § 922(o) does not contain Congressional findings that articulate the effects of the regulated activity on interstate commerce.  Lastly, the mere possession of a firearm capable of firing automatically does not have a direct effect on interstate commerce.  This court should follow the reasoning of Peters and not rely on Wright, because Peters demonstrated a change in the analytical framework employed by the Eleventh Circuit.

7.

Mr. Barrow objects to the Magistrate's finding that Officer Bransford saw the second driver's license in plain view in Mr. Barrow's wallet. (Doc. 92 at 20-23).  The record demonstrates that Officer Bransford only saw a corner of the item while it was in Mr. Barrow's wallet.   Contrary to the Magistrate's assertion, Officer Bransford did not identify the item as a California driver's license before he received it from Mr. Barrow. See (Gov. Exh. 1 at 0:35-1:02).  At one point on direct examination, Officer Bransford testified that he saw a second driver's license in Mr. Barrow's wallet. (T. 7).  However, he later clarified on cross examination that he had only seen a corner of the item while it was in Mr. Barrow's wallet. (T.

4

18). The officer's body camera recording supports the proposition that he had only seen a corner of the item. See (Gov. Exh. 1 at 0:38-0:49).

To seize the item, it was necessary the that incriminating character of the item be immediately apparent from the officer's observation of it before the seizure. Horton v. California, 496 U.S. 128, 136-137 (1990); United States v. Smith, 459 F.3d 1276, 1290 (2006). Seeing only a corner of that document did not reveal an immediately incriminating character to the document, particularly when having a second identification document in one's wallet is not unlawful. Officer Bransford unlawfully searched Mr. Barrow's wallet by compelling him to produce the second identification to him. The compelled production of the item also constituted a seizure that was unlawful given the absence of pre-existing evidence that the item had an incriminating character. Thus, Mr. Barrow objects to the Magistrate's determination that Officer's Bransford's search of Mr. Barrow's wallet and the seizure of the second driver's license were lawful. (Doc. 92 at 23).

8.

Mr. Barrow objects that the Magistrate's determination that the Georgia Tech Police officers impounded his vehicle pursuant to a lawful impoundment policy. (Doc. 92 at 23-25). While the Georgia Tech Police impoundment policy lists circumstances under which a vehicle could be impounded, it did not guide the

5

officers' decision-making regarding when to impound a vehicle. Thus, the impound failed to meet the programmatic requirements of the Fourth Amendment. See, e.g., United States v. Skinner, 957 F.Supp. 228, 232-233 (M.D. Ga. 1997).

9.

Mr. Barrow objects to the Magistrate's determination that the search of his car was a valid inventory search. (Doc. 92 at 25-31). "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." Florida v. Wells, 495 U.S. 1, 4 (1990). The search must have the purpose and objective of producing an inventory.

In this case, the Georgia Tech Police engaged in general rummaging inside Mr. Barrow's vehicle for the purpose of determining whether there was evidence of any crimes present. The officers catalogued virtually none of the numerous items in the vehicle that should have been documented according to the Georgia Tech Police policy. See United States v. Garay, 938 F.3d 1108, 1111 (9th Cir. 2019) (Inventory policies "assist courts to determine whether an inventory search is legitimate, as opposed to pretextual."); see also United States v. Wanless, 882 F.2d 1459, 1463-1464 (9th Cir. 1989) (invalidating an inventory search that deviated from required procedures). The officers did not produce an inventory or even attempt to do so. It is apparent from the bodycam videos of Officers Johnson

6

and Jornlid that they did not act with a purpose of itemizing the articles inside the car. The officers also did not complete required documentation, such as the VINS form.

 The legality of an inventory search requires policy at the programmatic level cabining or directing the exercise of discretion and then compliance with the policy by officers. See Bertine, 479 U.S. at 374 n. 6 ("Our decisions have always adhered to the requirement that inventories be conducted according to standardized criteria."); United States v. Westerman, 418 Fed. Appx. 822 (11th Cir. March 17, 2011) (The government must establish "that the officers complied with departmental policy in conducting the search); United States v. Proctor, 489 F.3d 1348, 1355 (D.C. Cir. 2007) (The Fourth Amendment requires that "if a standard procedure for conducting an inventory search is in effect, it must be followed.").

 The failure to prepare an inventory of the items inside Mr. Barrow's vehicle and the failure to complete required documentation show noncompliance with the departmental policy. Additionally, the bodycam videos of Officer Jornlid and Johnson evidence an investigative motive. See (Def. Exh. 2 at 04:08-14:32; Gov. Exh. 2 at 18:21-19:00, 21:37-28:40, 32:18-35:02). The record does not support the Magistrate's conclusion that this was a valid inventory search.

       10.

Mr. Barrow objects to the Magistrate's recommendation that his motions to suppress statements made to the Georgia Tech Police officers be denied. Mr. Barrow made an unequivocal invocation of his right to remain silent. After Sgt. Leao read <u>Miranda</u> warnings to him, Mr. Barrow twice said, "No," when Leao asked him if he was willing to speak with the officers. While Mr. Barrow may asked Leao a number of times "What did I do," that was not a general invitation for to be interrogated. As the Magistrate noted, Sgt. Leao had told Mr. Barrow the charges that would be placed on him before Sgt. Leao read Mr. Barrow and asked him if he was willing to talk with them.

The circumstances show that Sgt. Leao did not scrupulously honor Mr. Barrow's right to remain to silent. He approached Mr. Barrow and asked him if he was *still* willing to talk to them when he knew that Mr. Barrow had expressly told him that he was not willing to talk to them. Sgt. Leao was aware that Mr. Barrow was experiencing some impairment from alcohol consumption, and he admitted during his testimony at the suppression hearing that he was attempting to put pressure on Mr. Barrow to come forward with information when he told him that federal charges would be brought against him if he did not provide information regarding the gun. (T. 86-97, 92, 94; Gov. Exh. 7 at 00:40-01:05; 1:29-2:03, 2:46-3:24). Under the totality of the circumstances, Mr. Barrow did not render a

knowing, intelligent, and voluntary waiver of his Miranda rights, and statements to the Georgia Tech police officers were not voluntarily rendered.

11.

Mr. Barrow objects to the Magistrate's recommendation that his motion to suppress statements to the ATF officers at his home be denied. (Doc. 92 at 37-38). While acknowledging the Eleventh Circuit precedent of United States v. Burgest, 519 F.3d 1307 (11th Cir. 2008), Mr. Barrow posits that his Sixth Amendment right to counsel was violated when the officers questioned him despite his right to counsel having attached on a state charge that was analogous to the federal charge the ATF officers were investigating.

12.

Mr. Barrow objects to the Magistrate's determination that the statements he made at the ATF Field Office were voluntarily rendered. (Doc. 92 at 38-40). Mr. Barrow's statements connect with the statements questioning that ATF Agent Bazin and Task Force Officer Maldonado had conducted of him at his home three days earlier. Agent Bazin's statements to Mr. Barrow went beyond merely advising him of the potential penalties that he was facing or of the benefits of cooperating. In the context of the conversation, Agent Bazin told Mr. Barrow that he was not a target of the investigation, that the agents did not want to mess up his

life, cause him to lose his job, or get a felony conviction. Mr. Barrow's statements were induced by express or implied promises, which made them involuntary.

13.

For these same reasons, Mr. Barrow posits that to warrant to search his home was unlawful, because it relied upon the tainted statement that he rendered at the ATF office. Mr. Barrow posits that the <u>Leon</u> good faith rule does not apply here where the tainted statement used to obtain the search warrant is associated with the officers' own conduct. Mr. Barrow posits that the third exception to the <u>Leon</u> good faith rule applies here. For these reasons, Mr. Barrow objects to the Magistrate's recommendation that his motion to suppress evidence obtained through execution of the search warrant at his home be denied. (Doc. 40-42).

14.

Mr. Barrow objects that the Magistrate's determination that the warrants to compel disclosure of his cell phone data was not tainted by unlawfully obtained evidence that was presented in the warrant affidavit. (Doc. 92 at 44). The constitutional issues associated with that evidence are previously addressed herein.

15.

Mr. Barrow also objects to the Magistrate's determination that information regarding the NIBIN leads was not improperly presented in the warrant affidavit.

(Doc. 92 at 44-49). The NIBIN leads were to be used for investigative purposes and not court-related purposes such as probable cause determinations. However, they were presented for probable cause purposes in the warrant affidavit. Mr. Barrow further posits that the misuse of the NIBIN leads prevents application of the <u>Leon</u> good faith exception.

## Conclusion

For the reasons set forth herein, Mr. Barrow asks that his motion to suppress motion to suppress evidence (doc. 20), motion and amended motion to suppress statements, (docs. 21, 25), preliminary motion to dismiss indictment based on <u>Bruen</u> (doc. 22), motion to suppress evidence obtained through execution of search warrants (docs 23, 74), motion and amended motion to dismiss indictment for lack of jurisdiction (docs, 24, 75), and motion to suppress evidence obtained through execution of search warrant at Defendant's residence (doc 26).

Dated: This 24th day of June, 2024.

                                              Respectfully submitted,

                                              *s/ Kendal D. Silas*
                                              KENDAL SILAS
                                              State Bar No. 645959
                                              Attorney for FLOYD BARROW

Federal Defender Program, Inc.
Suite 1500, Centennial Tower
101 Marietta Street, N.W.
Atlanta, GA 30303

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Objections to Report and Recommendation was formatted in Times New Roman 14pt., in accordance with Local Rule 5.1C, and was electronically filed this day with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following:

>Richard Beaulieu, Esq.
>Assistant United States Attorney
>Northern District of Georgia
>Federal Courthouse, Ste. 600
>75 Ted Turner Drive, S.W.
>Atlanta, GA 30303

Dated:  This 24th day of June, 2024.

>s/ *Kendal Silas*
>KENDAL SILAS, Esq.
>Attorney for FLOYD BARROW