UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

FLOYD BARROW,

Defendant.

CRIMINAL ACTION NO.
1:23-CR-236-JBP-JEM

## **ORDER**

This matter is before the Court on the Magistrate Judge's Non-Final Report and Recommendation dated June 7, 2024 ("R. & R.") [Doc. 92] and Floyd Barrow's ("Defendant") Objections to the R. & R. [Doc. 96]. This Court finds as follows:

## **BACKGROUND**

Defendant is charged with one count of possession of a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). See [Doc. 10]. The R. & R. sets forth the facts of this case in considerable detail, see [Doc. 92, pp. 2–17], and the Court incorporates those facts by reference here.

The relevant procedural history of this matter is as follows: In August 2023, Defendant filed several motions, including a Motion to Suppress Evidence [Doc. 20]; Motion and Amended Motion to Suppress Statements [Docs. 21, 25]; Motion

to Dismiss Indictment Based on <u>Bruen</u> [Doc. 22]; Motion to Suppress Evidence Obtained Through Execution of Search Warrants on Cellular Telephone Accounts [Doc. 23]; Motion to Dismiss Indictment for Lack of Jurisdiction [Doc. 24]; and Motion to Suppress Evidence Obtained Through Execution of Search Warrant at Defendant's Residence [Doc. 26].  United States Magistrate Judge J. Elizabeth McBath held an evidentiary hearing on several of the motions on November 9, 2023.  [Doc. 40].  In February 2024, Defendant filed an amended motion to dismiss the indictment, [Doc. 75], as well as supplemental briefing regarding certain of his earlier motions, [Docs. 72, 74].

In her R. & R. dated June 7, 2024, the Magistrate Judge recommended that each of Defendant's motions be denied.  Defendant filed objections to the R. & R. on June 24, 2024, [Doc. 94], and then filed corrected objections on July 1, 2024, [Doc. 96].  The Government responded on July 3, 2024.  [Doc. 98].  The R. & R. is ripe for review.

**LEGAL STANDARD**

A district judge has broad discretion to accept, reject or modify a magistrate judge's proposed findings and recommendations.  <u>United States v. Raddatz</u>, 447 U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R. & R. that is the subject of a proper objection on a *de novo* basis

and any non-objected-to portion under a "clearly erroneous" standard.  Notably, a

party objecting to a recommendation "must specifically identify those findings

objected to.  Frivolous, conclusive, or general objections need not be considered by

the district court."  Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988).  The

Eleventh Circuit Court of Appeals has explained that placing this burden on the

objecting party "facilitates the opportunity for district judges to spend more time

on matters actually contested and produces a result compatible with the purposes

of the Magistrates Act."  United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir.

2009) (quoting Nettles v. Wainwright, 677 F.2d 404, 409–10 (5th Cir. Unit B

1982)).

## ANALYSIS

### I.    Objections Regarding Defendant's Motions to Dismiss Indictment (Objections 5 and 6)

Defendant makes two objections regarding the Magistrate Judge's

recommendation that his motions to dismiss the indictment, see [Docs. 22, 24, 75],

be denied.  Both objections are based on Defendant's argument that Congress's

enactment of § 922(o) runs afoul of the United States Constitution:  first, because §

922(o) violates the Second Amendment, and second, because Congress exceeded

its authority under the Commerce Clause in passing it.

In the first of these objections (Objection 5), Defendant points to no specific flaw in the Magistrate Judge's analysis; rather, he "maintains his position that § 922(o) is unconstitutional for violation of the Second Amendment" considering "the lack of Eleventh Circuit or Supreme Court precedent addressing [its] constitutionality." [Doc. 96, p. 3]. Having reviewed the Magistrate Judge's recommendation *de novo*, this Court agrees with her discussion of relevant caselaw, reasoning and ultimate conclusion—the same conclusion reached by several other courts in this Circuit. See [Doc. 92, pp. 17–19]. Thus, this Court finds that § 922(o) does not violate the Second Amendment because, as courts across the country have held, a machinegun is a dangerous and unusual weapon that falls outside its protection. See, e.g., United States v. Kazmende, No. 22-CR-00236, 2023 WL 3872209, at *2 (N.D. Ga. May 17, 2023), report and recommendation adopted, 2023 WL 3867792 (N.D. Ga. June 7, 2023) (collecting cases from several circuits holding that machineguns fall outside the protection of the Second Amendment). The decision by the Supreme Court of the United States in New York State Rifle and Pistol Association, Inc. v. Bruen does not alter this conclusion. 597 U.S. 1 (2022); see id. at * 2–3. Accordingly, Defendant's fifth objection is **OVERRULED**.

In the second of his objections to the constitutionality of § 922(o) (Objection 6), Defendant asserts that in enacting § 922(o), Congress exceeded its authority under the Commerce Clause.  See [Doc. 96, p. 3].  In the R. & R., the Magistrate Judge relied on United States v. Wright in determining that Defendant's Commerce Clause arguments must be rejected.  117 F.3d. 1265 (11th Cir. 1997).  Defendant objects, arguing (as he did to the Magistrate Judge) that the Court should apply the test outlined by the Eleventh Circuit in United States v. Peters and find that "mere intrastate possession of an item capable of causing a firearm to fire automatically does not have the necessary substantial effect on interstate commerce."  403 F.3d 1263 (11th Cir. 2005); [Doc. 96, p. 4].  Defendant also argues that Supreme Court cases issued after Wright compel this Court to find that § 922(o) exceeds Congress's authority under the Commerce Clause.  [Doc. 96, p. 3]; see Gonzalez v. Raich, 545 U.S. 1 (2005); United States v. Morrison, 529 U.S. 598 (2000).  Accordingly, Defendant objects to the Magistrate Judge's recommendation that his motion to dismiss for lack of jurisdiction, see [Docs. 24, 75], be denied, [Doc. 92, pp. 19–20].

Upon de novo review, this Court agrees with the Magistrate Judge's analysis and conclusion.  As this Court explained in Kazmende, neither the Supreme Court precedent Defendant cites nor the Eleventh Circuit's decision in Peters disturbs the

Eleventh Circuit's prior holding in <u>Wright</u>; thus, <u>Wright</u> remains binding precedent that this Court must follow.  <u>See</u> 2023 WL 3872209, at *8 (discussing how the Eleventh Circuit's holding in <u>Wright</u> remains binding precedent even after <u>Morrison</u>, <u>Raich</u> and <u>Peters</u> and explaining that "to do away with <u>Wright</u>, there must be an *en banc* or Supreme Court opinion 'clearly on point' and which 'actually abrogate[s] or directly conflict[s] with, as opposed to merely weaken[s],' that prior case" (quoting <u>United States v. Gillis</u>, 938 F.3d 1181, 1198 (11th Cir. 2019)).  And the decision in <u>Wright</u> makes clear that Defendant's argument that § 922(o) is not a proper exercise of Congress's power under the Commerce Clause must fail.  <u>See</u> 117 F.3d at 1268–71 (considering, and rejecting, the argument that Congress exceeded its authority under the Commerce Clause when enacting § 922(o)).  Thus, Defendant's sixth objection is likewise **OVERRULED**.

## II.   Objections Regarding Defendant's Motion to Suppress the Evidence Through Search of Defendant's Wallet (Objection 7)

Defendant next objects to the Magistrate Judge's determination that Officer Bransford's search of Defendant's wallet and seizure of his second driver's license was lawful.  [Doc. 96, p. 5].  With respect to the search, Defendant objects to the Magistrate Judge's finding that Defendant's second driver's license was in "plain view" of Officer Bransford because the record shows that he only saw a "corner" of the license.  <u>Id.</u> at 4.  However, the record also demonstrates that even if the

officer only saw a "corner" of the license, what he saw was sufficient for him to identify it as a second license.  See [Doc. 40, Gov. Ex. 1, at 0:35–1:02] (showing Defendant holding his wallet open while he speaks with the officer, prompting the officer to say, "I see you have a second license as well.").  Thus, the Court concludes that the Magistrate Judge was correct in finding that Officer Bransford observed Defendant's second identification in plain view, while Defendant was holding his wallet open to retrieve the first form of identification.  See [Doc. 92, pp. 20–21].  The Magistrate Judge was likewise correct in concluding that Officer's Bransford's warrantless search of the second license in his plain view was reasonable and lawful.  See Horton v. California, 496 U.S. 128, 133–34 (1990) ("If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." (citing Arizona v. Hicks, 480 U.S. 321, 325 (1987); Illinois v. Andreas, 463 U.S. 765, 771 (1983))); Kentucky v. King, 563 U.S. 452, 462 (2011) ("[W]arrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement.").

Defendant also objects to the Magistrate Judge's conclusion that the seizure of Defendant's second driver's license was lawful.  As Defendant points out, "[t]he plain view doctrine permits the warrantless seizure of an object when an officer is

lawfully located in a place from which the object can be plainly viewed, the officer has a lawful right to access the object, *and the object's incriminating character is immediately apparent*." United States v. Gant, 756 F. App'x 898, 900 (11th Cir. 2018) (citing United States v. Smith, 459 F. 3d 1276, 1290 (11th Cir. 2006) (emphasis added)).  And, for that incriminating character to be "immediately apparent," there must be "probable cause to believe the object in plain view is contraband or evidence of a crime."  Id.  Defendant argues that seeing only part of Defendant's second license "did not reveal an immediately incriminating character to the document, particularly when having a second identification in one's wallet is not unlawful."  [Doc. 96, p. 5].

This argument was raised to the Magistrate Judge, see [Doc. 70, pp. 14–15], and she conducted a thorough analysis of why the incriminating character of Defendants' second license was readily apparent, see [Doc. 92, pp. 20–23]. Specifically, the Magistrate Judge explained that there existed probable cause for Officer Bransford to believe the second license was evidence of a crime because "possessing a second driver's license . . . is an action that is closely linked with various ways to commit identity theft under Georgia law."  [Doc. 92, p. 22] (discussing O.C.G.A § 16-9-121(a)(1); Anderson v. State, 338 Ga. App. 802, 803 (2016); and Wilson v. State, 276 Ga. App. 39, 39–40 (2005)).

In his objections, Defendant does not explain how the Magistrate Judge purportedly erred in this analysis.  See [Doc. 96, p. 5].  But even upon *de novo* review, the Court agrees.  For the same reasons as those stated by the Magistrate Judge in the R. & R, the Court finds that Officer Bransford had probable cause to seize Defendant's second license, and thus the warrantless seizure was lawful. See [Doc. 92, pp. 21–22]; Gant, 756 F. App'x at 900.  Defendant's seventh objection is **OVERRULED**.

### III.   Objections Relating to Defendant's Motion to Suppress the Evidence Obtained Through Search of Defendant's Vehicle (Objections 1–4, 8–9)

### A.  Impounding of the Vehicle (Objections 2, 3, 8)

In his eighth objection, Defendant objects to the Magistrate Judge's conclusion that the Georgia Tech Police Department ("GTPD") officers lawfully impounded Defendant's vehicle pursuant to a legitimate impoundment policy. [Doc. 96, pp. 5–6].  "[A] warrantless inventory search of a legally impounded car conducted pursuant to an established procedure is valid under the Fourth Amendment."  United States v. Crawford, 294 F. App'x 466, 472 (11th Cir. 2008) (citing South Dakota v. Opperman, 428 U.S. 364, 372–73 (1976)).  He argues that although GTPD's impoundment policy "lists circumstances under which a vehicle could be impounded, it did not guide the officers' decision-making regarding when

to impound a vehicle." Id.  Accordingly, Defendant argues, the impound policy "failed to meet the programmatic requirements of the Fourth Amendment." Id. at 6.  And, if the impoundment policy was not lawful, neither was the officer's warrantless search of Defendant's impounded car.  See id.

However, this is the precise argument Defendant made to the Magistrate Judge.  See [Doc. 70, p. 24] (arguing that the GTPD policy "does not guide the exercise of the officers' discretion in whether to impound a vehicle," because "[i]t merely lists some circumstances in which the choice is left up to the officer on whether to impound a vehicle," which provides "insufficient control or direction of the officers' impoundment decisions to bring the policy within Constitutional muster").  Defendant does not explain how the Magistrate Judge erred in her consideration of this argument or explanation of the binding precedent that compelled her conclusion; he merely reiterates his prior argument on this issue.

This is not a valid objection,[1] and the Court finds that the Magistrate Judge did not err.[2]  Defendant's eighth objection is thus **OVERRULED**.

Defendant also makes two factual objections that appear to relate to the Magistrate Judge's assessment of this issue (Objections 2 and 3).   However, Defendant does not explain how these factual objections affect the accuracy of the Magistrate Judge's analysis or conclusion.  This is reason enough to overrule Defendant's objections.  See United States v. Mendez-Bernal, No. 19-cr-10, 2020 WL 5494728, at *2 (N.D. Ga. Sept. 11, 2020) (overruling factual objections where the defendant did not identify how the factual findings affect the outcome of the

---

[1] Rehashed arguments do not constitute valid objections.  See, e.g., Jones v. Ford, No. 20-CV-00422, 2023 WL 1790082, at *1 (M.D. Ga. Jan. 4, 2023) (explaining that "[p]utting forward the same arguments . . . is not sufficient to warrant the Court's consideration" and instead fits more into the category of general objections that need not be considered); Albu v. Home Depot, Inc., No. 1:15-CV-00412, 2017 WL 10752731, at *2 (N.D. Ga. Mar. 20, 2017) (finding the plaintiffs' objections to be without merit where they relied "primarily on the same arguments they made to the Magistrate Judge, who exhaustively addressed these arguments and both the persuasive and binding authority on the matter"); Holland v. Colvin, No. 4:14-CV-194, 2015 WL 1245189, at *3 (N.D. Ala. Mar. 18, 2015) (reasoning that objections which merely restate arguments previously presented are insufficient to alert the court to alleged errors of the magistrate judge); VanDiver v. Martin, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in [the R. & R.] context.").

[2] Moreover, even reviewing this issue de novo, the Court agrees with the Magistrate Judge's explanation of Eleventh Circuit precedent, analysis of the arguments and ultimate recommendation.

recommendation).  But because the Magistrate Judge referenced these facts in analyzing the GTPD Officers' decision to impound Defendant's vehicle pursuant to GTPD's impound policy, the Court nonetheless considers them here.

In finding that the officers impounded Defendant's vehicle pursuant to a lawful impoundment policy, the Magistrate Judge stated:  "[T]he GTPD officers decided to impound Defendant's vehicle because it was not covered by valid insurance, which Defendant admitted to during the traffic stop; it was blocking a roadway and a bike lane; and Defendant had been arrested with no other driver present who could legally remove the vehicle."  [Doc. 92, p. 24].  Defendant's second objection is to the Magistrate Judge's "factual assertion" that Defendant's vehicle was "blocking a roadway," see [Doc. 92, pp. 5, 24], because "while the vehicle was positioned in a bike lane, it was not blocking the roadway for vehicular traffic," [Doc. 96, p. 2].  Under Georgia law, a bicycle lane is part of the roadway.  See O.C.G.A § 40-1-1-(6.1) ("'Bicycle lane' means a *portion of the roadway* that has been designated . . . for the exclusive or preferential use of persons operating bicycles . . . ." (emphasis added)).  Thus, the Magistrate Judge's factual finding is correct.  Defendant's second objection is **OVERRULED**.

Defendant's third objection is again to the "factual assertion" by the Magistrate Judge that Defendant was arrested with no other legal driver present,

see [Doc. 92, pp. 5, 24], because, at the time of the traffic stop, there was a

passenger in Defendant's front seat who possessed a valid driver's license, [Doc.

96, p. 2].  The Court finds that the Magistrate Judge was correct in finding that, at

the time of Defendant's arrest, there was no other driver *who could legally remove*

*the vehicle*.  See [Doc. 92, pp. 5, 24].  Review of the record demonstrates that

Defendant's vehicle was without valid registration or insurance.  Georgia law

prohibits operating a vehicle without insurance and registration.  See O.C.G.A §§

33-34-4; 40-2-20(a)(1)(A).  Accordingly, the Magistrate Judge correctly found that

there was no other driver present who could legally remove the vehicle, even

assuming Defendant's passenger possessed a valid driver's license (and was

willing and able to operate Defendant's vehicle).  Defendant's third objection is

likewise **OVERRULED**.[3]

## B. *Search of the Impounded Vehicle (Objections 1, 4, 9)*

In his ninth objection, Defendant objects to the Magistrate Judge's

determination that the search of his vehicle constituted a valid inventory search.[4]

---

[3] Because Defendant's second and third factual objections are both overruled, and the
Magistrate Judge's findings are correct, the Court need not consider whether a potential
change in fact would alter the Magistrate Judge's conclusion that the GTPD officers
impounded Defendant's vehicle pursuant to a lawful impoundment policy.

[4] Defendant also, in his first objection, objects to the "factual assertion" that GTPD
Officers conducted an inventory search of Defendant's vehicle, see [Doc. 92, pp. 5, 25],

[Doc. 96, p. 6].  First, he argues that the officers did not sufficiently catalogue the items in Defendant's vehicle.  See id. at 6.  In doing so, Defendant again repeats arguments made to the Magistrate Judge.  See [Doc. 70, pp. 30–31] (describing the items in Defendant's vehicle that were not catalogued by the officers and arguing that the officers' true purpose was "to look for evidence rather than to inventory the contents of the vehicle" because "[n]o inventory was done").  In rejecting this argument, the Magistrate Judge reviewed binding and persuasive precedent in this Circuit and others.  See [Doc. 92, pp. 26–27].  In particular, the Magistrate looked to United States v. O'Bryant, where the Eleventh Circuit determined that failure to compile a complete written inventory of the contents of the defendant's briefcase did not mean the search was unlawful.  775 F.2d 1528, 1534 (11th Cir. 1985); [Doc. 92, pp. 26–27].

Defendant does not explain how the Magistrate Judge erred in this analysis.  And, upon review, the Court agrees with it.  The officers' search of Defendant's vehicle was not invalidated simply because they did not correctly log every item contained in the vehicle.  See O'Bryant, 775 F.2d at 1534 ("We . . . reject

---

because "the search of [Defendant's] vehicle was not a lawful inventory search," [Doc. 96, p. 2].  This objection—which seems to take issue with the Magistrate Judge's description of the search as an "inventory search" because Defendant contends the search was not a valid inventory search—is thus considered as part of Defendant's ninth objection.

O'Bryant's contention that the inventory search exception to the general prohibition against warrantless searches was violated because [the officer] did not prepare a complete list of the briefcase's contents.").

However, Defendant makes two additional arguments within his objection that appear to challenge whether additional factors present here (beyond just the incomplete inventory list) show that the GTPD the officers were engaging in an investigatory search. The Court considers these arguments below.

First, Defendant contends that the officers "did not complete [other] required documentation, such as the VINS form." [Doc. 96, p. 7]. Indeed, Defendant makes a separate objection the Magistrate Judge's "factual assertion" that Officer Johnson filled out a VINS report, see id at 2, as required by the impoundment policy, because the document that was completed does not state that it is a "Vehicle Information-Sharing and Notification Service" (or VINS) form, id. at 3 (Objection 4). Defendant additionally objects, without further explanation, that "[i]t is apparent from the bodycam videos of Officers Johnson and Jornlid that they did not act with a purpose of itemizing the articles inside the car." [Doc. 96, p. 7].

The Court begins with Defendant's arguments regarding the bodycam footage. Although Defendant asserts, in conclusory fashion, that the footage evidences an investigative motive on the part of the officers, he does not explain

*how* that is so; in his objection, he does not raise any specific actions or statements by the officers, instead only citing generally to approximately twenty minutes of footage.  And, having reviewed the bodycam footage, the Court disagrees that the officers' investigatory motive was "apparent."

With respect to the VINS report, Defendant does not explain in his objection how this fact would impact the Magistrate Judge's analysis or conclusion that the law does not require perfect compliance with an inventory policy in order to uphold an inventory search.  See [Doc. 92, pp. 26–28].  But, in any case, this Court finds that the record supports the Magistrate Judge's conclusion that a VINS report was completed.  See [Doc. 62, pp. 65, 69–70].

Thus, the Court concludes that the record reveals no evidence demonstrating that, prior to conducting the search, the officers believed they would find incriminating evidence in Defendant's vehicle.  And despite the officers' lack of complete compliance with GTPD's inventory policy, the Magistrate Judge correctly concluded that upon consideration of all of the other facts and circumstances in this case, the officers' search of defendant's vehicle was a reasonable inventory search.  See O'Bryant, 775 F.2d at 1534; see also United States v. Taylor, 636 F.3d 461, 465 (8th Cir. 2011).

Defendant's first, fourth and ninth objections are **OVERRULED**.

IV.     **Objections Regarding Defendant's Motion to Suppress
Statements to Georgia Tech Officers (Objection 10)**

In his tenth objection, Defendant objects to the recommendation that his
motions to suppress statements made to the GTPD officers be denied.  In short, he
argues that Defendant "did not render a knowing, intelligent, and voluntary waiver
of his Miranda rights, and his statements to the Georgia Tech police officers were
not voluntarily rendered." [Doc. 96, pp. 8–9].  The bulk of Defendant's objection
merely reiterates the facts surrounding Defendant's statements to the GTPD
officers—facts that the Magistrate Judge exhaustively discussed in her R. & R.
See [Doc. 92, pp. 31–37].  Even so, he objects to the Magistrate Judge's
recommended denial of his motion, asserting that the facts show an "unequivocal
invocation" of Defendant's right to remain silent.  [Doc. 96, p. 8].

The Court disagrees.  The Magistrate Judge appropriately considered each of
the facts raised by Defendant in his objection, see [Doc. 92, pp. 32–34], before
concluding that Defendant's assertion that he wished to invoke his Miranda rights,
when considered in conjunction with his continued and persistent attempts to speak
with law enforcement, resulted in "an (unequivocally) equivocal invocation."
[Doc. 92, p. 32] (citing United States v. Acosta, 363 F.3d 1141 (11th Cir. 2004)
(holding that if a suspect articulates his desire to cut off questioning in a way that
is "ambiguous or equivocal, then the police have no duty to clarify the suspect's

intent, and they may proceed with the interrogation") (internal citation omitted)).

And, because Defendant's assertion was equivocal, the Magistrate Judge reasoned,

law enforcement was allowed to speak with him.  See id.; [Doc. 92, p. 32].  Upon

review of the facts and relevant Eleventh Circuit precedent, this Court reaches the

same conclusion.

Further, in addition to determining that Defendant's Miranda rights were not

violated, the Court also finds that his statements were voluntarily made.  See

United States v. Sims, 719 F.2d 375, 378 (11th Cir. 1983).  In his objections,

Defendant states that the officer "was aware that [Defendant] was experiencing

some impairment from alcohol consumption," and "was attempting to put pressure

on [Defendant] to come forward with information when he told him that federal

charges would be brought against him if he did not provide information regarding

the gun."  [Doc. 96, pp. 8–9].

However, the Magistrate Judge correctly explained that here, the officers

"truthfully informed Defendant of the potential consequences of a crime" as

opposed to coercive conduct such as "subjecting the accused to an exhaustingly

long interrogation, the application of physical force or the threat to do so, or the

making of a promise that induces a confession."  See [Doc. 92, pp. 36–37] (citing

Colorado v. Connelly, 479 U.S. 157, 163 n.1 (1986); Miller v. Dugger, 838 F.2d

1530, 1536 (11th Cir. 1988); United States v. Castaneda-Castaneda, 729 F.2d 1360, 1362–63 (11th Cir. 1984)).  And, with respect to Defendant's intoxication, the Magistrate Judge correctly concluded that the record lacked any indication that the officers took advantage of Defendant due to intoxication and showed, instead, that Defendant was able to ask and answer questions successfully.  See [Doc. 92, p. 36]; United States v. Harris, 11-CR-18, 2011 WL 5514003, at *7 (N.D. Ga. Oct. 21, 2011), report and recommendation adopted, 2011 WL 5514058 (N.D. Ga. Nov. 10, 2011) ("[D]espite [a defendant's] alleged intoxication, the hearing testimony supports a finding that he was coherent and cognizant of the situation when he waived his Miranda rights. . . .").

Defendant's tenth objection is **OVERRULED**.

### V. Objections Regarding Defendant's Motion to Suppress Statements to ATF Officers at Defendant's Home (Objection 11)

In his eleventh objection, Defendant objects to the Magistrate Judge's recommendation that his motion to suppress statements to the Bureau of Alcohol, Tobacco and Firearms ("ATF") officers at his home be denied on the grounds that his Sixth Amendment right to counsel was violated.  [Doc. 96, p. 9]  However, Defendant acknowledges that binding Eleventh Circuit precedent, United States v.

Burgest, 519 F. 3d 1307, precludes ruling in his favor on this issue.  Defendant's

eleventh objection is **OVERRULED**.

> **VI.    Objections Regarding Defendant's Motion to Suppress**
> **Statements to ATF Officers at ATF Field Office (Objection 12)**

In his twelfth objection, Defendant objects to the Magistrate Judge's

determination that the statements he made to officers at the ATF Field Office were

voluntarily rendered.  [Doc. 96, p. 9].  Defendant asserts that those statements

"connect with" the questioning conducted by ATF Special Agent ("SA") Bazin and

Task Force Officer ("TFO") Maldonado at his home three days earlier and were

induced by the officers' express or implied promises, rendering them involuntary.

Id.  Specifically, he states that the officers' statements at his home "went beyond

merely advising him of the potential penalties that he was facing or the benefits of

cooperating" because SA Bazin told Defendant "that he was not a target of the

investigation and that the agents did not want to mess up his life, cause him to lose

his job, or get a felony conviction."  Id. at 10.

Upon *de novo* review of the Magistrate Judge's recommendation, this Court

agrees that Defendant's statements at the ATF Field Office were spontaneously

made.  [See Tr. at 118:18–24] (testimony showing that Defendant said, "Hey, I

don't know if this helps or not but I have the gun box for the firearm in my

room.").  Even assuming that Defendant correctly characterized his statement as

having been made in connection with the agent's statements at his home three days

prior, the Court nonetheless finds that the statements were not induced by improper

behavior on the part of SA Bazin and TFO Maldonado.

In the R. & R., the Magistrate Judge thoroughly examined examples of

permissible officer conduct under Eleventh Circuit precedent:

> To begin, law enforcement is permitted to inform a suspect that "cooperating with the government would be in his best interest," and doing so does not render a subsequent statement involuntary.  *United States v. Hipp,* 644 F. App'x 943, 947 (11th Cir. 2016); *United States v. Nash*, 910 F.2d 749, 753 (11th Cir. 1990) (statement that cooperating defendants generally "fared better time-wise" did not amount to illegal inducement).  Nor does, as explained above, truthfully commenting on the potential severity of a sentence that a suspect may face generally lead to an involuntary waiver or statement.  *United States v. Davidson*, 768 F.2d 1266, 1271 (11th Cir. 1985) (law enforcement assurance that "the accused's cooperation would be passed on to judicial authorities and would probably be helpful to him is not a sufficient inducement so as to render a subsequent incriminating statement involuntary"); *United States v. Quinn*, 123 F.3d 1415, 1423-24 (11th Cir. 1997) (police did not improperly induce defendant's confession by telling him that "he was facing a 46-year sentence but might receive a more favorable sentence if he cooperated" and that "it would be more difficult to cooperate once an attorney had been appointed"); *United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992) ("[D]iscussions of realistic penalties for cooperative and non-cooperative defendants . . . are normally insufficient to preclude free choice.") (internal citation omitted); *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir. 1978) ("[T]elling the [defendant] in a noncoercive manner of the realistically expected penalties and encouraging [him] to tell the truth is no more than affording [him] the chance to make an informed decision with respect to [his] cooperation with the

government.").  In contrast, "the kinds of deception that are generally deemed to trigger suppression are lies about a defendant's legal rights (i.e., 'you must answer our questions'), false promises (i.e., 'whatever you say will be just between us'), or threats (i.e., 'if you don't talk, you won't see your family for a very long time')."  *United States v. Graham*, No. 3:13-cr-11-TCB, 2014 WL 2922388, at *9 (N.D. Ga. June 27, 2014) (internal quotation marks and citation omitted).

[Doc. 92, pp. 38–40].  Upon review of this caselaw, it is clear that the agent's statements that the agents did not want Defendant to mess up his life, lose his job or get a felony conviction do not amount to coercive conduct sufficient to trigger suppression here.

However, the statement that Defendant was not a target of the agents' investigation is factually dissimilar from these cases.  As such, the Court considers whether that statement should alter the Magistrate Judge's ultimate conclusion.  Upon review, the Court finds that it does not.

In United States v. Farley, the Eleventh Circuit explained that misrepresentations by law enforcement officers about the scope or nature of their investigation does not, alone, render a statement involuntary; rather, they have to be accompanied by other coercive conduct in order to render a later statement involuntary.  607 F.3d 1294, 1327–28 (11th Cir. 2010). Indeed, "[i]solated incidents of police deception, and discussions of realistic penalties for cooperative and non-cooperative defendants, are normally

insufficient to preclude free choice."  See United States v. Jones, 32 F.3d

1512, 1517 (11th Cir. 1994) (quoting United States v. Mendoza-Cecelia, 963

F.2d 1467, 1475 (11th Cir. 1992)).

Accordingly, the Court finds that the Magistrate Judge correctly

concluded that Defendant's statements were voluntary.  Thus, Defendant's

twelfth objection is **OVERRULED**.

### VII. Objections Regarding Defendant's Motion to Suppress the Evidence Obtained Through Search of Defendant's Home (Objection 13)

Defendant objects that the evidence seized during execution of the search

warrant at Defendant's home, supported by the statement Defendant made at the

ATF Field Office, was unlawfully obtained because the underlying statement was

not voluntarily made.  [Doc. 96, p. 10].  However, the Court has already

determined that Defendant's statement at the ATF Field Office was voluntary, so

this argument is moot.

Defendant also objects to the Magistrate Judge's conclusion that even if the

Court did not conclude that the statements were voluntarily made, the Leon good

faith exception would properly apply to keep this evidence from being suppressed.

468 U.S. at 913.  The Leon good faith exception prevents the suppression of

evidence that is obtained through officers' objective, good faith reliance on a

warrant that is facially valid.  Id.  However, in cases where the officer had no

reasonable grounds for believing the warrant was properly issued, the Leon good

faith exception would not apply.  See id. at 922–23 (explaining that an exception

exists in cases (1) where the magistrate judge was misled by information in an

affidavit that the affiant knew was false or would have known was false but for his

reckless disregard for the truth; (2) where the issuing magistrate judge wholly

abandoned his judicial role; (3) where the affidavit supporting the warrant was so

lacking in indicia of probable cause that the officers' belief in its existence entirely

unreasonable; and (4) where a warrant is so facially deficient that the executing

officers could not have reasonably presumed it to be valid).  The Court agrees with

the Magistrate Judge's conclusion that none of these situations, which would

preclude application of the Leon good faith exception, apply here.  Thus,

Defendant's thirteenth objection is **OVERRULED**.

> **VIII.** **Objections Regarding Defendant's Motion to Suppress the Evidence Obtained Through Search of Defendant's Cell Phone (Objections 14, 15)**

In his fourteenth objection, Defendant objects to the Magistrate Judge's

determination that "the warrants to compel disclosure of his cell phone data was

not tainted by unlawfully obtained evidence that was presented in the warrant

affidavit."  [Doc. 96, p. 10].  Defendant explains that the "constitutional issues

associated with that evidence" have been "previously addressed" in his earlier objections.  Thus, because the Court has overruled all of Defendant's prior objections and determined that the evidence was not unlawfully obtained, Defendant's fourteenth objection is likewise **OVERRULED**.

Finally, in his fifteenth objection, Defendant objects to the Magistrate Judge's determination "that information regarding the NIBIN leads was not improperly presented in the warrant affidavit." [Doc. 96, p. 11]; see also [Doc. 92, pp. 44–49].  He argues that the NIBIN leads could not be used for "court-related purposes such as probable cause determinations," and, additionally, that this misuse prevents application of the Leon good faith exception.  [Doc. 96, p. 11].

Although not mentioned in his objection, in his argument before the Magistrate Judge, Defendant relied upon United States v. Wondie for the assertion that NIBIN leads could not be used for this purpose.  No. CR18-315, 2021 WL 5987099, at *3 (W.D. Wash. Dec. 17, 2021) (relying on the instruction of NIBIN leads documents that disclaimed, "NIBIN leads cannot be used for the establishment of probable cause or for any court-related purpose until evidence has been confirmed by a microscopic comparison.").

However, the facts of that case are distinguishable from the case at bar.  As the Magistrate Judge explained in her R. & R.:

In *Wondie*, the defendant was being investigated for murder, and the assigned detective recovered shell casings from the crime scene and had them entered into NIBIN. 2021 WL 5987099, at *2. The resulting NIBIN lead sheet contained a disclaimer saying that it was "a notification of a presumptive investigation lead" and explaining that evidence "may be confirmed by microscopic comparison when requested for a formal report." *Id.* The detective did not submit the evidence for a formal evaluation, so the "lead" never became a confirmed "hit." *Id.* Nevertheless, in her affidavit, the detective stated that "forensic examination *has established* that shell casings recovered from the scene *matched* a gun owned by defendant." Id. (emphasis in original). And later the detective wrote, "[d]etectives learned through NIBIN testing that the firearm used to shoot and kill the victim was the same firearm linked to two Seattle Police Cases." *Id.* These statements were patently false. And indeed, the detective ultimately admitted so to the court. *Id.* at *3.

[Doc. 92, p. 47].

Here, TFO Maldonado accurately conveyed the limitations of the NIBIN leads in the warrant affidavit. Moreover, as the Magistrate Judge explained, there is a distinction between the NIBIN leads and NIBIN *lead sheets*. And it is the NIBIN *lead sheet* that includes language restricting its use to "investigative purposes only" and that the document "should not be relied upon as evidence and investigators should collect original reports for any evidentiary purposes." See [Doc. 80-1]. The record reflects that this is what TFO Maldonado did, having pulled and referencing information from the original police reports.

But even if the NIBIN leads were improperly presented, the Court agrees with the Magistrate Judge that the Leon good faith exception to the exclusionary

rule would apply to the evidence seized through a search of Defendant's cell phone.  468 U.S. at 913.  This Court disagrees with Defendant's assertion, without any further argument, that "misuse of the NIBIN leads prevents application" of the exception.  As the Magistrate Judge did in the R. & R., the Court finds that this would not amount to any of the four exceptions to the <u>Leon</u> good faith doctrine. <u>See</u> <u>id.</u> at 923.  Defendant's fifteenth objection is thus **OVERRULED.**

**CONCLUSION**

The Court has carefully reviewed the Magistrate Judge's Non-Final Report and Recommendation [Doc. 92] and all objections thereto.  After review, the Court finds no clear error in the portions of the recommendation not objected to.  As to the portions subject to valid objection, the Court finds that the Magistrate Judge's factual and legal conclusions are correct, and therefore Defendant's objections are **OVERRULED** in their entirety.  Accordingly, the Court **APPROVES AND ADOPTS** the Non-Final Report and Recommendation [Doc. 92] as the judgment of the Court.  For the reasons stated in the Magistrate Judge's R. & R., Defendant's motions [Docs. 20, 21, 22, 23, 24, 25, 26, 74 and 75] are **DENIED**.

**SO ORDERED** this 13th day of August, 2024.

_____
**J. P. BOULEE**
United States District Judge