IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CRIMINAL ACTION NO. |
| | ) | 1:23-CR-236-JPB |
| FLOYD BARROW | ) | |
| | ) | |

## SENTENCING MEMORANDUM

COMES NOW undersigned counsel on behalf of the Defendant, FLOYD

BARROW, and files this memorandum for purposes of sentencing.   Mr. Barrow

is before the Court for sentencing after having entered a plea of guilty to one count

of possessing a machinegun (i.e., a Glock switch) in violation of 18 U.S.C. §§

922(o) and 924(a)(2).   Mr. Barrow asks the Court to grant him a downward

adjustment in his offense level pursuant to United States Sentencing Guideline §

4C1.1.   He also moves the Court to grant him a downward departure under

U.S.S.G. § 5H1.3 (Mental and Emotional Conditions) and § 5K2.0 (Circumstances

Not Adequately Taken into Consideration in Formulating the Guidelines).   Mr

Barrow also asks for a downward departure to accomplish a special treatment

purpose.   Lastly, Mr. Barrow asks that the Court to grant him a variance from the

sentencing guidelines based on the factors set forth in 18 U.S.C. § 3553(a).   In this

1

memorandum, Mr. Barrow addresses each of those requests.

## Factual Background

Floyd Barrow 35 years old.   He was born in San Francisco and lived in Northern California for most of his life until relocating to the Atlanta area in lat July 2022.    Mr. Barrow grew up in a household with his mother, stepfather, older brother Kai, and the maternal half-siblings.   He had a close relationship with his family members and was an avid chess player.   He participated in school chess clubs, played recreational basketball teams in the seventh and eighth grades, and enjoyed playing sports, roller skating, music, and spending time with his friends and family.

Mr. Barrow has always had a close relationship with his maternal grandmother, Rosalie Harris, who also lived in Northern California.   When Mr. Barrow was in the eighth grade, his mother and stepfather moved to Missouri. Mr. Barrow and his older brother, Kai, asked to remain in California and live with their grandmother.   They were allowed to do so.   On September 30, 2005, Kai was shot and killed in Modesto, California.   Mr. Barrow was 15 years old at the time.

Mr. Barrow's life was forever changed. <u>See</u> (PSR, ¶ 138). His mental outlook was significantly affected.   Mr. Barrow fell into a depression and began to

suffer greatly from anxiety.   He has continued to suffer from those conditions to this day.

After Kai's passing, Mr. Barrow went to live with his parents in Missouri for a period, and then the family returned to live in California.   On November 18, 2009, after Mr. Barrow and his family had returned to Northern California, he lost his cousin, Elray Jones, Jr..   Elray was also victim of gun violence.   Elray was a nineteen-year-old college student at San Francisco State University who had moved to California from New Orleans after Hurricane Katrina.   Elray was killed as he walked on the streets in West Oakland, where he lived.   Mr. Barrow's struggles with anxiety and depression increased then and have continued to do so.

Despite his struggles with anxiety and depression, Mr. Barrow has developed a longstanding, successful career in culinary arts.   In 2007, Mr. Barrow began working as a cook at the Veterans Affairs Medical Center.   He has consistently worked in the food service industry since then.   He has worked as a Culinary Services Director or Food Service Director at several senior living facilities in Northern California.   He has also worked as a sous chef for Guckenheimer at Google.   From 2017 to 2022, Mr. Barrow worked at Facebook in Freemont, California.   He started as a cook and worked his way up to lead cook and then to senior sous chef.

The kitchen has become Mr. Barrow's sanctuary, but he has still had struggles with anxiety and depression.    While working at Facebook in March 2022, Mr. Barrow sought counseling through his insurance provider, Kaiser Permanente, for life stress that stemmed from difficulties in his relationship with his girlfriend, their eventual breakup, and his inability to visit or spend time with the girlfriend's child, with whom he had become close.    Mr. Barrow recalls that he also conveyed he had anxiety that related to the tragic, violent events that had happened to his family members.    Mr. Barrow was diagnosed with an anxiety disorder, and it was noted that he was experiencing severe anxiety and depression that ranged from moderately severe to severe.    He was also found to be positive for post-traumatic stress disorder.    Mr. Barrow received mental health services over the course of approximately a month.

Later in 2022, Mr. Barrow re-connected with Sylvanna Easterling, an old friend he had known from high school.    By that time, Ms. Easterling was living in the Atlanta area.    In July 2022, Mr. Barrow came to visit Ms. Easterling and soon afterward he decided to move here, feeling it would be a fresh start for him.    Mr. Barrow obtained a job at Bon Appetit Management Company, working as an Executive Sous Chef at the Savannah College of Art and Design.

After moving to the Atlanta area, Mr. Barrow became alarmed by a violent

4

incident in the local news and by his car being broken into near his workplace.
Due to his paranoia and fear about his safety, Mr. Barrow decided to obtain a
firearm for his protection.   Mr. Barrow did not have a Georgia ID at that time and,
thus, was not able to buy a firearm in a store.   Through someone a family member
knew, Mr. Barrow was put in contact with the person who sold him a Glock pistol.
The pistol had attached to it the metal piece he has now learned to be a Glock
switch.   When Mr. Barrow purchased the gun, he inquired about the attachment,
and the seller indicated that the gun would fire repetitively as a result of the
attachment.

In the early morning on April 8, 2023, Mr. Barrow drove his vehicle on the
Georgia Tech campus.   A campus police officer stopped Mr. Barrow's vehicle for
driving without the headlights being illuminated.   During the encounter, the
officer that Mr. Barrow did not have current insurance on the vehicle and that the
California license plate on the vehicle was expired.

When obtaining Mr. Barrow's driver's license from him, the officer also saw
the corner of what he believed to be a second identification document in Mr.
Barrow's wallet.   The officer obtained that driver's license from Mr. Barrow too.
The second driver's license bore a photograph of Mr. Barrow, but it had a different
name on it.   The driver's license number came back to a third person.

Eventually, the officer decided to place Mr. Barrow under arrest, and after a brief struggle, Mr. Barrow was taken into custody.    During a subsequent search of Mr. Barrow's vehicle at the scene, a Georgia Tech Police officer located under the driver's seat the Glock pistol with the switch attached to it.

Mr. Barrow was taken into custody and charged with several state offenses related to the incident.   Mr. Barrow posted bond a few days later.   Approximately two and a half months later, ATF officers came to Mr. Barrow's home to question him about the gun and the attachment that were seized from his vehicle.   Mr. Barrow was cooperative and submitted to interrogation from the officers in his apartment.   Three days later, the leading investigating ATF officer and others returned to the residence and arrested Mr. Barrow on a federal complaint that had been obtained, which charged Mr. Barrow with the instant offense.   Mr. Barrow remained in custody for four months and thirteen days, until he was released on bond.[1]   Mr. Barrow has been on location monitoring throughout the time that he has been on pretrial release.   Initially, he was also on a home detention condition. On August 6, 2024, the home detention condition was changed to a curfew, which is administered by the Probation Office.   Mr. Barrow has been compliant with his

---

[1]  Mr. Barrow was released on bond on November 13, 2023.

pretrial release conditions.

Since shortly after his release on pretrial release in this case, Mr. Barrow has been employed through Compass Group as a sous chef at Life University.   Mr. Barrow oversees one of the campus dining facilities.   Since the beginning of August 2024, Mr. Barrow has also been employed part-time as a cook at a Texas Roadhouse restaurant.   Mr. Barrow is engaged to Martha Andrade.   The couple live together, and they are expecting their first child.   The baby is due to be born being December 24 and December 30.

## I.    The Court Should Sustain Mr. Barrow's Objection to the Lack of Inclusion of a Downward Adjustment for Zero-Point Offenders Under U.S.S.G. § 4C1.1.

Section 4C1.1 provides for a two-level downward adjustment in the defendant's offense level if he meets ten enumerated criteria:

(1)    the defendant did not receive any criminal history points from Chapter Four, Part A.

(2)     the defendant did not receive an adjustment under § 3A1.4 (Terrorism);

(3)    the defendant did not use violence or credible threats of violence in connection with the offense;

(4)    the offense did not result in death or serious bodily injury;

(5)    the instant offense of conviction is not a sex offense;

7

(6)     the defendant did not personally cause substantial financial hardship;

(7)     the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8)     the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);

(9)     the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and

(10)    the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1(a).   Mr. Barrow has zero criminal history points. (PSR, ¶ 52).

Mr. Barrow posits that he meets all the remaining criteria in § 4C1.1, including the requirement that he not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon in connection with the offense. See U.S.S.G. § 4C1.1(a)(7).   The language of that requirement suggests that it is intended to preclude the downward adjustment for persons who possess a firearm or dangerous weapon in connection with another offense rather than simply possessing the firearm that is the subject of the firearms charge for which he has been convicted.   It possession of that firearm was intended to

preclude the defendant from the downward adjustment, the Sentencing

Commission could have plainly so.    For instance, the Sentencing Commission

could have said as a requirement, the defendant did not possess a firearm.    It could

have also said the defendant must not have possessed a firearm as part of the

instant offense.

At worst, § 4C1.1(7) is ambiguous, and Mr. Barrow posits that under the

rule of lenity, the ambiguity should be resolved in his favor. ("The rule of lenity is

a canon of statutory construction that requires courts to construe ambiguous

criminal statutes narrowly in favor of the accused." United States v. Wright, 607

F.3d 708, 716 (11th Cir. 2010)(Pryor, J., concurring)).    For these reasons, Mr.

Barrow posits that the Court should apply the two-level downward adjustment

under § 4C1.1.

## II.    The Court Should Grant a Downward Departure under U.S.S.G. § 5H1.3 for Mental and Emotional Conditions.

Section 5H1.3 states:

Mental and emotional conditions may be relevant in determining
whether a departure is warranted, if such conditions, individually or in
combination with other offender characteristics, are present to an
unusual degree and distinguish the case from typical cases covered by
the guidelines. See also Chapter Five, Park K, Subpart 2 (Other
Grounds for Departure).

U.S.S.G. § 5H1.3.    Mr. Barrow's mental condition is present to an unusual degree

9

in this case.   As noted in the pre-sentence report and in treatment records

pertaining to Mr. Barrow, he suffers from severe anxiety and depression. <u>See</u>

(PSR, ¶ 136) Additionally, those conditions are causally connected to the offense

conduct.   Mr. Barrow has a deep and abiding worry that he will be the victim of a

violent attack or assault from others.   That genuine fear derives from the

experiences he had with losing close family members to violence from others in

public spaces.   After moving to the Atlanta area, Mr. Barrow became panicked

about his personal safety after learning of an incident in the news and having his

car broken into while he was at his workplace.   That confluence of circumstances

led to Mr. Barrow obtaining the firearm that had the Glock switch attached to it.

Upon learning of the nature of the firearm attachment Mr. Barrow thought it was

interesting, but it was not a motivating factor in him obtaining a firearm.   He was

extremely anxietous about his personal safety and wanted a weapon for his

protection.

　　　The presence of Mr. Barrow's relevant mental health condition and the

extent to which it played a role in his offense conduct is unusual.   Those

circumstances also distinguish this case from the typical case covered by § 2K1.1,

the guideline which applies to firearms offenses.   Mr. Barrow asks the Court to

downwardly depart under § 5H1.3 to fully take those circumstances into account.

### III.    The Court Should Grant a Downward Departure to Accomplish a Specific Treatment Purpose.

Guideline § 5H1.3 states that "[i]n certain cases a downward departure may be appropriate to accomplish a specific treatment purpose. See § 5C1.1, Application Note 7." U.S.S.G. § 5H1.3.   It appears that the citation to the commentary of § 5C1.1 was intended to refer to application note 6 rather than application note 7.   Application note 6 addresses "[d]epartures based on specific treatment purpose," whereas application note 7 addresses "[u]se of substitutes for imprisonment."   Application Note 6 specifically addresses the scenario of a downward departure from Zone C of the Sentencing Table (under which at least half the minimum must be satisfied by imprisonment) to Zone B of the Sentencing Table (under which all or most of the minimum term may be satisfied by imprisonment) for the purpose of accomplishing a specific treatment purpose. Application note 6 goes on to state that a downward departure to accomplish a specific treatment purpose "should be considered only in cases where the court finds that (A) the defendant is an abuser or narcotics, other controlled substances, or alcohol, *or suffers from a significant mental illness, and (B) the defendant's criminality is related to the treatment problem to be addressed.*" U.S.S.G. § 5C1.1, app. n. 6 (emphasis added).   The application note also states that "[i]n determining

11

whether such a departure is appropriate, the court should consider, among other things, (1) the likelihood that completion of the treatment program will successfully address the treatment problem, thereby reducing the risk to the public from further crimes of the defendant, and (2) whether imposition of less imprisonment than required by Zone C will increase the risk to the public from further crimes of the defendant." Id.

As discussed, Mr. Barrow suffers from significant mental illnesses, and his offense conduct is related to those illnesses.   Mr. Barrow is currently undergoing treatment, and a copy of the treatment plan will be provided to the Court under separate cover.   It is likely that completion of the plan will help to successfully address Mr. Barrow's conditions.   Through completion of the plan, any risk of further crimes that Mr. Barrow presents to the public will be reduced.   However, it is noted that Mr. Barrow is a zero-point offender.   The last and perhaps only other offense he was found to have committed was a non-violent infraction under California law in 2007.   A risk to the public will not be increased by allowing Mr. Barrow to remain in society and complete the treatment plan.   For these reasons, Mr. Barrow asks the court to grant a downward departure to a non-custodial sentence so that he may complete the treatment plan that he is undergoing.

IV.    The Court Should Grant a Downward Departure under U.S.S.G. §

**5K2.0 for the Presence of a Circumstance Not Adequately Taken into Consideration by the Sentencing Commission in Formulating the Guidelines.**

Consistent with 18 U.S.C. § 3553(b)(1), Guideline § 5K2.0(a)(1)(A) provides that the Court may downwardly depart from the Sentencing Guideline range if "there exists mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines, that in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described."   Further, "[a] departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence." U.S.S.G. § 5K2.0(a)(2)(B).   "Cases implicating a factor not adequately taken into consideration by the Sentencing Commission are said to fall outside the 'heartland' of typical cases embodying the conduct in the applicable guideline." United States v. Hoffer, 129 F.3d 1196, 1200 (11th Cir. 1997).

There are a number of circumstances present in this case which individually and collectively make this case one that is outside the heartland of cases embodying conduct subject to application of Sentencing Guideline § 2K2.1. Some such circumstances which are immediately identifiable are the following: (1)

13

the extent of anxiety and depression suffered by Mr. Barrow and the degree to which those conditions played a role in the offense conduct; (2) the unusual, tragic, and traumatic circumstances that brought about the mental health conditions; (3) the general lack of criminal history for Mr. Barrow; (4) Mr. Barrow's high degree of acceptance of responsibility for his offense as demonstrated by his conduct on pretrial release; (5) Mr. Barrow's compliance with a current course of treatment for the mental health conditions underlying the offense conduct; (6) the psychological benefits to Mr. Barrow of remaining connected to family, treatment, and work; (7) the immediately impending birth of Mr. Barrow's first child; and (8) the extent and weight of Mr. Barrow's family responsibilities for the present and immediate future.   Mr. Barrow asks the Court to take consideration of the factors which cause this case to be outside the heartland of cases covered by § 2K2.1 and to depart accordingly from the Sentencing Guideline range.

## V.    Mr. Barrow Asks the Court to Grant a Sentence of Time Served with Supervised Release to Follow as a Reasonable Sentence Under 18 U.S.C. § 3553(a).

Section 3553(a) provides that when imposing a sentence the district court must consider the following factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for

the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (4) the need to protect the public from further crimes of the defendant; (5) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (6) the kinds of sentences available; (7) the kinds of sentence and the sentencing range established by the Guidelines; (8) any pertinent policy statements issued by the Sentencing Commission, (9) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (10) the need to provide restitution to any victims of the offense. See 18 U.S.C. § 3553(a).    The sentence must be "sufficient, but not greater than necessary" to meet the stated aims of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, deterring criminal conduct, protecting the public from further crimes of the defendant, and providing the defendant with needed training, care, and correctional treatment in the most effective manner. 18 U.S.C. § 3553(a).    "A sentencing court may not presume that a sentence within the applicable guideline range is reasonable." United States v. Green, 375 Fed. Appx. 940, 942 (11th Cir. 2010) (quoting Nelson v. United States, 129 S.Ct. 890, 892 (2009)).

A sentence below the applicable Sentencing Guideline range is warranted here.   As discussed, Mr. Barrow's offense conduct in this case is linked to his anxiety and heightened worry about his personal safety.   There are deeply mitigating circumstances surrounding Mr. Barrow's development of those conditions.   Additionally, Mr. Barrow is successfully engaged in course of treatment designed to help Mr. Barrow successfully manage his mental health conditions.

Mr. Barrow is person of many redeeming qualities.   He is a very dedicated person and prone to giving of himself to others.   As noted, he has been the primary supporter for his grandmother.   He has the primary caregiver for his grandmother during a period when she has suffered from cancer, despite his relative youth.   Before moving from California to Georgia, Mr. Barrow would routinely take his grandmother to grocery store to make sure that she had the necessary items for her nourishment and wellbeing.

On the one hand, Mr. Barrow has a long-standing history of successful and gainful employment in the culinary arts field.   On the other hand, he has very limited criminal history. The only noted disposition on his record is for the California infraction of acts constituting theft.   That matter is mitigated by its relatively minor nature, the lengthy time period since its occurrence, and Mr.

Barrow's youth at the time.   The incident occurred more than seventeen years ago,

when Mr. Barrow was eighteen years old at the time.

There are ample studies which indicate that the section of the brain which

controls judgment, the prefrontal cortex, is generally not fully developed until a

person reaches approximately twenty-five years old.   Additionally, the Supreme

Court has recognized that there are "mitigating qualities of youth." Miller v.

Alabama, 567 U.S. 460, 476 (2012) (holding that mandatory life without parole

sentencing scheme violates Eighth Amendment for juvenile offenders).   In Miller,

the Supreme Court noted three significant gaps between juveniles and adults:

> First, children have a lack of maturity and an underdeveloped sense of
> responsibility, leading to recklessness, impulsivity, and heedless risk-
> taking. Roper, 543 U.S., at 569, 125 S.Ct. 1183. Second, children are
> more vulnerable to negative influences and outside pressures,
> including from their family and peers; they have limited control over
> their own environment and lack the ability to extricate themselves
> from horrific, crime-producing settings. Ibid. And third, a child's
> character is not as well formed as an adult's; his traits are less fixed
> and his actions less likely to be evidence of irretrievable depravity.
> Id., at 570, 125 S.Ct. 1183.

Id. at 471 (punctuation omitted).   In recognition of the mitigating factors of youth,

the Sentencing Commission has recently adopted an amendment to § 5H1.1 of the

Guidelines, authorizing the courts to consider age as a departure ground in the case

of a youthful offender.[2]

Mr. Barrow's life has taken on a much different course since 2007.    He has shown himself to be a law-abiding, contributing member of society.    Mr. Barrow is beginning an important, new phase to his life – one that is likely to make only more responsible and law-abiding.    He is about to become a father and a husband. His dedication of working routinely from the early morning hours to late at night to help provide for his fiancé and growing family while at the same successfully managing the requirements of his pretrial release provide an example of his very positive character traits.

Mr. Barrow served almost four and half months in custody prior to his release on bond.    Undersigned counsel respectfully posits that given Mr. Barrow's personal characteristics and history and the benefits that can be derived from allowing him to remain in the community, no additional period of incarceration is necessary to advance the goals of sentencing that are identified in § 3553(a).    In fact, incarcerating Mr. Barrow at this point may do more harm than good. Treatment is an important consideration for Mr. Barrow, and that can be

---

[2] See Amendments to the Sentencing Guidelines (April 30, 2024) at p. 25, available at Reader-Friendly" Version of Final 2024 Amendments to the Federal Sentencing Guidelines (ussc.gov) (last visited September 4, 2020).

accomplished in the community, while allowing him to develop the foundations for being a good father and a provider for his family.    Allowing Mr. Barrow to remain in the community would not create an unwarranted disparity.    The JSIN statistics included the pre-sentence report indicate that non-custodial sentences are imposed on roughly one and five defendants sentenced with Mr. Barrow's guidelien range under § 2K2.1

## Conclusion

For the reasons stated herein and others to be discussed at Mr. Barrow's sentencing hearing, undersigned counsel requests that the Court sustain his objection to the Guidelines calculations and grant the other requests he has made on behalf of Mr. Barrow, including imposing a sentence that does not require further incarceration.

DATED: this 20th day of November, 2024.

Respectfully submitted,

S/ Kendal D. Silas
Kendal D. Silas
State Bar No. 645959
Attorney for FLOYD BARROW

FEDERAL DEFENDER PROGRAM, INC.
Centennial Tower, Suite 1500
101 Marietta Street, N.W.
Atlanta, GA 30303

404/688-7530; Kendal_Silas@fd.org

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing

Sentencing Memorandum, formatted in Book Antiqua 13 pt., upon:

> Richard Beaulieu, Esq.
> United States Attorney's Office
> Richard B. Russell Bldg.
> Suite 600
> 75 Ted Turner Drive, SW
> Atlanta, GA 30303

by filing the same through the Court's ECF system.

Dated:    This 20th day of November, 2024.


S/ Kendal D. Silas
KENDAL SILAS
State Bar No. 645959
Attorney for FLOYD BARROW